SWIFT, Judge.
Defendant-appellant, American Road Insurance Company (American Insurance) appeals from a judgment awarding plaintiff-appellee, Lonco Trucking Company, Inc. (Lonco), its insured under a policy providing collision coverage, the statutory penalty and attorney’s fee and also damages for loss of use of a 1975 Ford gravel truck.
The record reveals that on December 27, 1977, Lonco’s vehicle was involved in a colli *570 sion. Plaintiff notified its insurer and several days later Wesley Armstrong, an adjuster representing American Road, met with Lonco’s president to determine the extent of the damage. Under the policy American Road had the options to pay the loss in cash, repair or replace the truck or take it at the agreed or appraised value. The initial repair estimate totalling $12,-128.98 was made by Mr. Armstrong and Red Yates, the bodyshop manager for Huffman Motor Company, but was not completed until February, 1978, mainly because of the difficulty in finding and getting the prices of necessary parts. Since it was evident that the repair estimate was considerably less than the value of the truck at the time of the accident (later stipulated to be $17,000.00), American Insurance elected to have it repaired by Huffman Motors and the parts were ordered. Plaintiff evidently approved and executed a proof of loss on February 27, 1978.
Included in the repair estimate was an item designated as a “complete cab assembly”. When this was received in May, 1978, it was discovered that contrary to Mr. Yates’ belief the cab was only a shell. Missing were such items as seats, dashboard, electrical fixtures, and the other components of a truck cab. Subsequently, it was discovered that Ford Motor Company could not supply a fully equipped cab and the missing parts had to be ordered separately.
At this point in mid May, 1978, William Blackman, who was then adjusting the claim for the insurer, recommended that the vehicle be “totalled”. American Road refused, stating that because $6,000.00 had already been spent the repairs should continue.
On May 23,1978, plaintiff’s attorney sent a letter to the adjuster threatening suit unless the claim, including loss of use, was concluded. Suit was filed July 19, 1978. The repairs were completed by Huffman Motors and the truck delivered in February, 1979.
There is no dispute over the insurer’s liability for the cost of repairs to the truck. American Insurance has paid Huffman Motors over $22,000.00 for the work. This litigation arose from the insurer’s decision to satisfy its obligation to the insured by causing the vehicle to be repaired, rather than declaring it a total loss and paying Lonco therefor, and because the repairs were not completed until almost one year after the execution of the proof of loss.
The record does not reflect any reason for the long delay except difficulties experienced by Huffman Motors in securing needed parts. However, its Mr. Yates testified that the average time for such a repair job in the spring of 1978, with the usual delays to obtain parts, was from five to six months. The trial judge concluded that when the proof of loss was executed on February 27, 1978, the parties might reasonably have anticipated that the truck would be repaired in a maximum period of about five months or by July 27, 1978, and the delay in this was unreasonable. We are unable to say that he erred in this finding.
In a somewhat similar case, Hammack v. Resolute Fire Insurance Company, 233 La. 359, 96 So.2d 612 (1957), our supreme court held that when such an insurer elects to restore a wrecked vehicle to its former condition, rather than pay for its total loss, it must have the car repaired within a reasonable time. The failure to do so, even though possibly caused by its repairman’s inability to obtain necessary parts, constitutes arbitrary action which subjects the insurer to the penalty and reasonable attorney’s fee provided in LSA — R.S. 22:658.
We are convinced this rule is applicable in the instant suit and that the trial court correctly imposed the 12% penalty on $17,-000.00 (the total loss value of the vehicle under the policy which the insurer refused to pay timely), less certain deductibles.
We also agree with the trial judge that the plaintiff is entitled to recover damages for loss of use of the insured vehicle while being repaired and with the following comment in his reasons for judgment:
“Defendant argues that such damages are not recoverable because the policy *571 does not provide for them. The Court finds that defendant’s reliance on the policy is misplaced. When defendant exercised the option to make payment by repairs, defendant entered into an agreement to repair through their agent, Huffman Motors. Defendant assumed the obligation of timely repair. Damages for breach of repair contracts include loss of use under C.C. 1934. Henry Waters Truck and Tractor Co., Inc. v. Relan, 277 So.2d 463 (1st Cir., 1973) on Reh., writ den. 279 So.2d 206.”
We realize the case cited by the district judge involved a claim by a repairman against the owner of the car instead of a suit by the owner against his own collision insurer. Nevertheless, it is authority for the proposition that loss of use is a recoverable item for breach of a contract to repair.
In Hammack, of course, the supreme court has clearly recognized the obligation of a collision insurer in Louisiana to repair the vehicle within a reasonable time when it elects to repair rather than pay for a total loss. And the courts of numerous other states have held that the insured can recover for loss of use of profits when the repairs are not made within a reasonable time. See 68 A.L.R.3d 1196. Whether this obligation arises from a new agreement between the parties in regard to the settlement or is simply an implied duty under the policy is of no moment. We are convinced it existed under the facts of this case.
In support of its argument that loss of use damages should not be allowed, the defendant has cited, among other cases, Nicholas v. Continental Insurance Company, 296 So.2d 468 (La.App. 4 Cir. 1974), and Daspit v. Midstates Marine Insurance Company, 209 So.2d 66 (La.App. 4 Cir. 1968). The plaintiffs in both cases failed to prove that their vehicles were total losses. In Nicholas the court did say that the insurance company was not liable for delays and inconvenience resulting from the repairman’s failure to complete the repairs. However, unlike the present suit, it appears that the insured therein, rather than the insurer, had the option under the policy to have his car repaired or sell it. In Daspit recovery for the rental of a replacement vehicle pending repair of the insured vehicle was denied for the reason that the policy did not provide for same. However, the court made no specific finding or ruling as to whether or not the delay was unreasonable or which party had the option to repair or total the vehicle under the policy. We therefore do not believe that Nicholas and Daspit are highly pertinent to the present case.
Also, we find no merit to defendant’s argument that by allowing both penalties and damages for loss of use the plaintiff is recovering “double damages”. The purpose of LSA — R.S. 22:658 is to penalize arbitrary failure of insurers to pay claims timely, while the award for loss of use is to fully compensate the owner for damages actually suffered as a result of the breach of contract to repair the vehicle within a reasonable time.
No replacement vehicle was rented by the insured in this case. However, the trial court awarded $6,636.00 as the loss of profit or net income the plaintiff would have derived from the operation of the wrecked vehicle (after deducting expenses directly and solely related thereto) for about six months or that part of the repair period which the court concluded was unreasonable. The proof submitted consisted mainly of the testimony of the plaintiff’s president and his comparative analysis of the net income of another truck in 1978. Although it lacked the detail, exactness and corroboration normally desired, we cannot say that the trial judge erred or abused his discretion in considering such evidence and basing the award thereon. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). The testimony was un-contradicted, except possibly by inference from two of plaintiff’s tax returns. And the judge correctly stated that a proportion of the corporation’s taxable income (from which general overhead and adjustments have been deducted) is not necessarily an accurate basis for determining the net income that has been derived from the operation of one of its trucks.
*572 The defendant correctly contends, however, that the trial judge was manifestly in error in one minor respect. He neglected to deduct 10% of the driver’s salary or $84.00 from the truck’s monthly net income for the cost of workmen’s compensation insurance. This will reduce such monthly profit from $1,076.00 to $992.00 and the total award for six months loss of use to $5,952.00. The judgment will be amended accordingly.
For the foregoing reasons, the judgment of the district court is amended so as to reduce the plaintiff’s award for loss of use from $6,636.00 to $5,952.00. In all other respects .it is affirmed. The costs of this appeal are to be paid by the plaintiff-appellant.

AMENDED AND AFFIRMED.